**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 4:16-CR-140 |
| | § | |
| RANDALL WILLIAM WADE | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Randall William Wade's ("Wade") *pro se* Letter Motion (#135), wherein he requests that the court appoint counsel to assist him in filing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  United States Probation and Pretrial Services ("Probation") recommends denying the motion.  Having considered the motion, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

Wade is currently serving a 120-month term of imprisonment, which was imposed after he pleaded guilty to Possession with Intent to Distribute and Dispense and Distribution and Dispensing of Controlled Substances, in violation of 18 U.S.C. § 1341, and nine counts of Money Laundering, in violation of 18 U.S.C. § 1957.  Wade is currently housed at the Federal Medical Center ("FMC") Fort Worth, in Fort Worth, Texas.[1]  In the instant motion, Wade requests the court appoint "counsel/public defender to assist him on a compassionate release due to COVID-19 pandemic."  Wade avers that he should be granted compassionate release because he is 69 years

---

[1] As of July 21, 2020, the figures available at www.bop.gov lists 19 inmates and 4 staff members at FCI Beaumont Low as "Confirmed Active Cases" of COVID-19.  The figures also indicate that 577 inmates and 6 staff have recovered, while 12 inmates have succumbed to the disease.

old, a non-violent, first time offender, and suffers from diabetes, hyperlipidemia, hypertension, coronary artery disease, hypothyroidism, and chronic kidney disease.

II.     Appointment of Attorney for Post-Conviction Proceedings

Wade requests the appointment of counsel to assist him in filing a motion for a sentence reduction/modification under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013). Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court, however, may, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See  United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if

2

the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).  For the reasons set forth below, Wade has failed to identify a nonfrivolous claim with factually and/or legally complex issues.  Moreover, it is unclear whether he qualifies for the appointment of counsel, as Wade apparently had sufficient funds to retain an attorney to file a motion with Warden Wilson seeking compassionate release, which, according to Probation, was denied on May 26, 2020, because Wade was determined to be ineligible.  Therefore, Wade's request for appointed counsel is denied.

III.    Compassionate Release

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock

4

foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 833-34; *Raia*, 954 F.3d at 597.

On May 7, 2020, Wade's attorney filed a motion requesting compassionate release on behalf of Wade with Warden Wilson of FMC Fort Worth, which was denied on May 26, 2020. Therefore, it appears that Wade has exhausted his administrative remedies.  Nevertheless, nothing in Wade's motion indicates that extraordinary and compelling reasons exist to release him from confinement.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[2] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

A.    Age and Health

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

The USSG also provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B).

---

[2] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

Here, Wade, age 69, is more than 65 years old; however, he has served only 45 months of his 120-month term of imprisonment.  Nevertheless, Wade indicates that he suffers from diabetes, hyperlipidemia, hypertension, coronary artery disease, hypothyroidism, and chronic kidney disease.  According to Probation, medical records provided by the BOP verify these diagnoses.  Furthermore, Probation indicates that on April 20, 2020, Wade tested positive for COVID-19 and, as a result, spent nine days in the hospital.  Wade was discharged from the hospital on May 13, 2020, and continued receiving treatment and close monitoring when he returned to FMC Fort Worth.  As of June 21, 2020, Wade was designated as being "asymptomatic."  This medical summary does not meet the criteria listed above.  None of these medical conditions is terminal or substantially diminishes his ability to provide self-care.  Hence, Wade has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to modify his sentence.

B.     "Other" Reasons

Wade's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director

in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

Wade maintains that he is at "high risk" of suffering adverse consequences if he contracts COVID-19 in light of his age and medical history.  Although Wade expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Wade, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  In fact, according to Probation, Wade already contracted the virus and was hospitalized for nine days.  Following his return to the

facility, he continued to receive treatment and close monitoring, and has now fully recovered. Thus, it appears that BOP responded appropriately and ensured that he received the necessary medical treatment to survive and recover from the disease.

Thus, Wade has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to warrant his release from imprisonment. Moreover, the court cannot conclude that Wade would not pose a danger to the safety of any other person or to the community, if released from confinement. Wade's offense of conviction involved his prescribing and distributing large quantities of hydrocodone, alprazolam, and amphetamine salts while acting outside the usual course of practice as a physician and without a legitimate medical purpose. He unlawfully prescribed controlled substances to pregnant women, leading to babies being born with dangerous drugs in their systems, and to other patients, resulting in overdoses and overdose deaths. He engaged in money laundering with funds derived from his unlawful distribution of controlled substances over a two-year period, depositing more than $227,000.00 in drug proceeds into his bank account. In addition, Wade has prior convictions for deadly conduct, resulting from his brandishing a firearm at an individual during an argument, and driving while intoxicated. While in pretrial detention, Wade had a heated verbal exchange with a corrections officer and threatened the officer with a syringe. During a detention hearing, Wade had an outburst in which he declared that he would not comply with any conditions of release restricting his possession of firearms, while emphatically shaking his head, "No." Furthermore, Wade's 120-month sentence is significantly below the USSG recommended sentence of 235 to 293 months' imprisonment. Therefore, compassionate release is not warranted in light of the applicable § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release).

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  To date, the BOP has placed 7,002 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any

verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)).  Here, Wade's track record is similarly a poor one.

In short, Wade has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances").  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

IV.   Conclusion

Consistent with the foregoing analysis, Wade's *pro se* Letter Motion (#135) is DENIED.

SIGNED at Beaumont, Texas, this 22nd day of July, 2020.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE